IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIOSLEN JIMENEZ-ORTIZ, Petitioner<br><br>v.<br><br>JESSICA SAGE, Warden, Federal Correctional Institution Lewisburg; BRIAN MCSHANE, Field Office Director of Enforcement and Removal Operations, Philadelphia Field Office, Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD BLANCHE, Acting U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, Respondents | : | No. 3:26cv3138<br><br>(Judge Munley) |

## MEMORANDUM ORDER

Before the court is Petitioner Dioslen Jimenez-Ortiz's petition for writ of habeas corpus under 28 U.S.C. § 2241.[1] (Doc. 1). The petitioner is a native and citizen of Cuba. Id. ¶ 2. The petition is otherwise light on petitioner's background. The court thus relies on documents filed by respondents.

---

[1] Federal district courts are authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Jimenez-Ortiz filed the instant petition while detained at FCI Lewisburg which is in the Middle District of Pennsylvania. (Doc. 1, ¶ 35). The petitioner asserts that his continued detention violates his right to due process. Thus, the court has habeas jurisdiction over the petition. Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004).

According to a declaration filed by a deportation officer for Immigration and Customs Enforcement, Jimenez-Ortiz entered the United States in August 2016 as a Cuban parolee. (Doc. 3-4, A. Campbell Decl., ¶ 2). Two years later, his legal status was adjusted to lawful permanent resident. Id. ¶ 3.

The government may deport lawful permanent residents under specific legal grounds defined by federal law, such as committing certain criminal offenses. 8 U.S.C. § 1227(a)(2). Jimenez-Ortiz has a criminal record. (Doc. 3-5). He was convicted of conspiracy to distribute a quantity of oxycodone pills in violation of 21 U.S.C. § 846 and sentenced to 48 months of imprisonment. Id. at ECF pp. 1–2.

While incarcerated at FCI Allenwood Low, ICE officers screened the petitioner and determined that he was removable from the United States. (Doc. 3-2 at ECF p. 2). On November 3, 2025, ICE served the petitioner with a Notice to Appear, charging him as deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) for conviction of an aggravated felony, and § 1227(a)(2)(B)(i) for his controlled substances conviction. (Doc. 3-4, ¶ 5).

On March 23, 2026, an immigration judge ordered Jimenez-Ortiz removed to Cuba and denied his applications for asylum, withholding of removal under 8 U.S.C. § 1231(b)(3), and withholding of removal under the Convention Against

Torture. (Doc. 3-6). On March 27, 2026, Jimenez-Ortiz entered ICE custody upon his release from Bureau of Prisons custody. (Doc. 3-4, ¶ 7).

Petitioner did not appeal his removal order.[2] Id. ¶ 8. Consequently, the petitioner has been subject to an administratively final removal order since April 24, 2026, or 30 calendar days after the IJ's decision. See 8 C.F.R. § 1241.1(c) ("An order of removal made by the immigration judge at the conclusion of proceedings . . . shall become final . . . [u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time[.]"); 8 C.F.R. § 1003.38(b) (2022) (setting the time to appeal as 30 calendar days after an IJ's oral decision).

On May 6, 2026, ICE served Jimenez-Ortiz with notice of third-country removal to Mexico, and petitioner made a fear claim about that country. (Doc. 3-4 ¶ 9). The fear claim was resolved with a negative finding by the government. Id. ¶ 11. On June 2, 2026, however, Jimenez-Ortiz refused to exit his pod for "out processing to Mexico" and was deemed a failure to comply. Id. ¶ 12. He was served formal notice of his failure to comply status on August 6, 2026. Id. ¶ 15. On October 17, 2026, the ICE ERO office was advised that the petitioner

---

[2] The court confirmed this information using the Executive Office for Immigration Review's case status website by inputting the petitioner's A-number and nationality. *Automated Case Information System*, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, https://acis.eoir.justice.gov/ (last visited Nov. 20, 2026).

had been placed on a third country removal list now that Mexico is not a removal option. Id. ¶ 17. The government asserts that, based on its "success of third country removals, it is anticipated that petitioner's removal from the United States will occur upon identification of a country." Id. ¶ 18.

Jimenez-Ortiz advances no allegations relative to his fear of being removed to Mexico or another third-country. Petitioner has also not filed a traverse. All the facts presented in the government's response and exhibits go unrebutted. Petitioner thus has failed to rebut evidence that the government is still attempting to remove him to a third country after he impeded efforts at removal to Mexico by his own noncompliance and lack of cooperation.[3]

Pursuant to 8 U.S.C. § 1231, the attorney general is directed to remove noncitizens from the United States within 90 days — the "removal period." 8 U.S.C. § 1231(a)(1)(A). Under the statute, the removal period shall be extended beyond a period of 90 days, and the noncitizen may remain in detention during such extended period if the noncitizen "conspires or acts to prevent the [noncitizen's] removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). During the removal period, the attorney general is directed to detain the noncitizen. 8 U.S.C. § 1231(a)(2)(A).

[3] The petition does not challenge any component of the third-country removal procedures implemented in his case.

From a purely statutory standpoint, the petitioner's own conduct has placed him back within the removal period. But for petitioner's lack of cooperation, he would have been removed to Mexico.

Petitioner further asserts that his due process rights are being violated by his continued detention. (Doc. 1, ¶¶ 38–45). Where a noncitizen's due process rights are of concern, "the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." Zadvydas v. Davis, 533 U.S. 678, 699 (2001). Further, "if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period." Id. at 700.

To aid in this analysis, Zadvydas recognized a presumptively reasonable six-month period of detention under 8 U.S.C. § 1231(a)(1) and (a)(6). Id. at 701.

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may

> be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id.

Here, although Jiminez-Ortiz has been detained under 8 U.S.C. § 1231(a) for just over six months, the detention in question does not exceed a period reasonably necessary to secure the petitioner's removal. The court can only conclude petitioner actively impeded his own removal to Mexico in June and that there is a significant likelihood of removal to a third country in the reasonably foreseeable future.

In short, the petitioner has elected continued detention in a federal prison pending removal efforts to a different third country rather than release in Mexico. Federal law recognizes continued detention under the circumstances. Consequently, for the reasons set forth above, it is hereby **ORDERED** that Dioslen Jimenez-Ortiz's petition for writ of habeas corpus under 28 U.S.C. § 2241, (Doc. 1), is **DENIED**. The Clerk of Court is directed to close this case.

**BY THE COURT:**

**Date:** 11/20/26

**JUDGE JULIA K. MUNLEY**
**United States District Court**